This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41396

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANGEL ROSALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Richard M. Jacquez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

{1}     This matter was submitted to the Court on Defendant's brief in chief pursuant to an order assigning this matter to the general calendar with modified briefing. Following consideration of the brief in chief, the Court ordered additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we reverse in part and affirm in part, for the following reasons.

**{2}**     Defendant appeals from his convictions for conspiracy to commit first degree murder, conspiracy to commit armed robbery, and being a felon in possession of a firearm. [2 RP 333] Defendant challenges the sufficiency of the evidence supporting his convictions, and he asserts that the two convictions for conspiracy violate his right to be free from double jeopardy. [BIC 6, 11] Defendant also argues the district court erred in denying his motion for mistrial. [BIC 13]

## Sufficiency of the Evidence

**{3}**     "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (alteration, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{4}**     We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). Relevant to Defendant's conviction for being a felon in possession of a firearm, the jury instruction here required that the State prove beyond a reasonable doubt that Defendant possessed an SKS rifle.[1] [2 RP 270] The jury was also instructed on relevant principles of constructive possession. The jury instructions stated that a person is in possession of a firearm when, on the occasion in question, they know what it is, they know it is on their person or in their presence, and they exercise control over it. [2 RP 271] In addition, the jury instructions provided that "even if the object is not in [a person's] physical presence, [they are] in possession if [they] know what it is and where it is and [they] exercise[] control over it"; two or more people can possess an object at the same time; and "[a] person's presence in the vicinity of the object or [their] knowledge of the existence or the location of the object is not, by itself, possession." [Id.] *See, e.g.*, *State v. Garcia*, 2005-NMSC-017, ¶ 13, 138 N.M. 1, 116 P.3d 72 (identifying circumstances in which the defendant is not in actual possession to be based on a theory of constructive possession in which the state must prove the defendant "knew the gun was present in the car and exercised control over it. Proximity alone does not constitute possession" (citations omitted)). In a case involving constructive possession, "we must be able to articulate a reasonable analysis that the fact-finder might have used to determine knowledge and control." *State v. Jimenez*, 2017-NMSC-039, ¶ 48, 392 P.3d 668 (internal quotation marks and citation omitted).

---

[1]Defendant does not challenge the sufficiency of the evidence supporting the second and third elements of his conviction—that Defendant had, in the preceding ten years, been convicted and sentenced to one or more years' imprisonment and that this incident happened in New Mexico on or about the 15th day of December, 2020. [BIC 7]

Knowledge in this context refers to knowledge of the presence and character of the item possessed. *Garcia*, 2005-NMSC-017, ¶ 14. "In addition to knowledge, there must be sufficient evidence of control." *Id.* ¶ 16. Where two individuals have equal access to an item, the State must present evidence of more than physical proximity to establish control. *Id.* ¶ 21.

{5}     Here, there was evidence that both Defendant and his girlfriend, Jasmine, texted Victim from a single number, and on December 5, 2020, an individual using that same number offered to sell an SKS rifle. [BIC 2-3] Several days later on the morning of the shooting, Defendant and Jasmine were seated in a black SUV that belonged to Defendant and was parked outside Victim's home. [BIC 1-3; AB 3] Soon after the shooting, police located the parked SUV and observed Jasmine drive a red car, belonging to her parents and purchased for her use [BIC 4], into the parking lot and park near the SUV [BIC 3; AB 5]. Police later stopped the red car and arrested Defendant, who was in the passenger seat. [BIC 4] Police found an SKS rifle in the locked trunk of the red car. [BIC 4] The SKS rifle was not the one involved in the shooting at Victim's home. [AB 7-8; BIC 8]

{6}     Defendant asserts the State failed to prove beyond a reasonable doubt that he had constructive possession of the SKS rifle because there was no evidence that he had knowledge of the rifle or exercised control over it. [BIC 9] The State argues that the jury could reasonably conclude that Defendant knew of the SKS rifle in the trunk and exercised control over it. [AB 7] In support of this argument, the State points out that Defendant and Jasmine were dating and were very close, and emphasizes that Jasmine's mother testified to having never seen Jasmine with a firearm. [AB 7] According to the State, the jury could use that testimony to infer that the rifle belonged to Defendant and use "their common sense" to conclude that Defendant was aware of and in control of the rifle. [AB 7] We disagree.

{7}     With regard to knowledge, we conclude that the evidence was insufficient to allow the jury to reasonably infer or conclude that Defendant knew of the rifle's presence. There is nothing to indicate Defendant knew that the rifle was in the trunk of the red car on the day of the shooting, and the State has not identified any facts indicating Defendant's behavior exhibited a consciousness of guilt. Though there was a text message referencing the rifle sent from a phone Defendant sometimes used, there was no evidence indicating that the phone belonged to Defendant, that Defendant was the primary user of the phone, or that Defendant sent the message referencing the rifle. Moreover, that text message was sent more than a week before the day of the shooting. [6/14/23 CD 2:42:00-43:00] Given the time that passed between the phone's use and the absence of evidence identifying the text message's sender, we conclude that the State failed to provide evidence sufficient to allow a jury to reasonably infer or conclude Defendant knew where the rifle was. *See Jimenez*, 2017-NMCA-039, ¶ 48 ("The State must prove that the defendant knows of the presence and character of the item possessed." (internal quotation marks and citation omitted)); *see also Slade*, 2014-NMCA-088, ¶ 14 (noting that a conclusion based on a logical inference that "must be buttressed by surmise and conjecture" cannot stand (internal quotation marks and

citation omitted)); *Hisey v. Cashway Supermarkets, Inc.*, 1967-NMSC-081, ¶ 7, 77 N.M. 638, 426 P.2d 784 (stating that an inference must be "based on facts established by the evidence, not upon conjecture or other inferences").

**{8}** Moreover, even if we were to assume the evidence was sufficient to establish knowledge, Defendant's presence in the vicinity of the rifle or knowledge of its location alone is further insufficient for the State to prove Defendant had control over the rifle. [RP 271] *See Garcia*, 2005-NMSC-017, ¶ 16. There was no testimony indicating Defendant drove Jasmine's car, nothing to suggest Defendant placed or kept his belongings in the trunk, no indication Defendant had keys to the car or trunk, and nothing found in the car's interior—such as ammunition—from which the jury could infer Defendant had control over a rifle in the locked trunk. *See State v. Martinez*, 2020-NMCA-043, ¶¶ 55-58, 472 P.3d 1241 (concluding that there was sufficient evidence of constructive possession of marijuana and paraphernalia where items were recovered from a vehicle's trunk, other paraphernalia was found throughout the vehicle's interior, and despite the vehicle being registered to another individual, there was evidence that the defendant was permitted to operate the vehicle); *Garcia*, 2005-NMSC-017, ¶ 22 (concluding that evidence regarding a defendant's ability to exercise control over ammunition is sufficient to give rise to an inference of control over a firearm that can utilize that ammunition). Accordingly, we conclude that the evidence was insufficient to allow the jury to reasonably conclude Defendant had control over the rifle. *See Garcia*, 2005-NMSC-017, ¶ 24 (noting that the proximity of the gun to the defendant and the defendant's aggressive behavior, though incriminating and helpful to a reasonable fact-finder, would not have been enough alone to prove control without the ammunition clip, which it described as a "critical piece of evidence").

**{9}** Based on the above, viewing the evidence in the light most favorable to the State, we are unable to articulate a reasonable analysis that the jury might have used to determine Defendant knew the rifle was in the trunk of the car and Defendant exercised control over the rifle. *See id.* ¶ 13. Accordingly, we conclude the State failed to present sufficient evidence to support Defendant's conviction for being a felon in possession of a firearm.

**{10}** Defendant also argues the State failed to demonstrate that Defendant was involved in the shooting at Victim's home. [BIC 10; RB 3] Though Defendant does not articulate a specific element of his convictions that is unsupported by the evidence, we understand Defendant to assert that the evidence fails to establish his presence at the scene of the shooting. [BIC 10] Defendant emphasizes that although a witness saw a man and a woman sitting in Defendant's SUV outside Victim's home just prior to the shooting, the witness did not see any noticeable tattoos, and Defendant has face tattoos. [Id.] Defendant also points out that the SUV could have left prior to the shooting, that the texts messages to Victim could have come from Jasmine because they were sent from a phone that both he and Jasmine used, and that only Jasmine's shoeprints were found at the scene. [BIC 4, 10; RB 3] We note, however, that Victim's wife testified that Victim identified Defendant and Jasmine as the individuals outside the home, the SUV seen outside Victim's home belonged to Defendant, a witness saw a man and a

woman sitting in the SUV, and within hours of the shooting, police found approximately $10,000 in cash—roughly the amount Victim had on his person the night before the shooting—in Defendant's and Jasmine's possession. [BIC 1-4; AB 3-5, 8-9]

**{11}** Viewing this evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict, we conclude that there was sufficient evidence to support the conclusion that Defendant was involved in the incident at Victim's home. *See Slade*, 2014-NMCA-088, ¶ 13; *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence"), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 19, 478 P.3d 880; *see, e.g.*, *State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 (recognizing that the testimony of a single witness constitutes sufficient evidence to uphold a conviction). Although Defendant implies the evidence falls short of showing he was present—either because he left before the shooting or was never there to begin with—the jury was free to reject Defendant's version of the facts. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Further, it was for the jury to resolve any conflicts and determine weight and credibility in the testimony. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482. Defendant's second argument regarding the sufficiency of the evidence is therefore unpersuasive.

**Double Jeopardy**

**{12}** Defendant argues that his convictions for both conspiracy to commit first-degree murder and conspiracy to commit armed robbery violate his right to be free from double jeopardy. [BIC 11] The State concedes that Defendant's conviction for conspiracy to commit armed robbery should be vacated. [AB 10-11] While we are not bound to accept the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 18, 347 P.3d 738 (stating appellate courts are not bound by the state's concessions), we agree that one of Defendant's conspiracy convictions must be vacated.

**{13}** We review a claim of double jeopardy de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant raises a "unit of prosecution" double jeopardy claim, arguing that he has been improperly convicted of multiple violations of a single statute based on a single course of conduct. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. According to our Supreme Court, "the Legislature established . . . a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." *State v. Gallegos*, 2011-NMSC-027, ¶ 55, 149 N.M. 704, 254 P.3d 655. "At trial, the state has an opportunity to overcome the Legislature's presumption of singularity, but doing so requires the state to carry a heavy burden." *Id.* To determine whether the State has overcome the Legislature's presumption of singularity and demonstrated the existence of more than one conspiracy, we apply a multifactor totality of circumstances test. *See id.* ¶¶ 42, 56 (identifying five factors: the location of the alleged conspiracies, the temporal overlap between the conspiracies, the

overlap of personnel between the conspiracies, the overt acts charged, and the role played by the defendant).

**{14}**   Here, the State offered no evidence to rebut the presumption of singularity. The robbery and murder both occurred at the same location, outside Victim's home. [BIC 1-2] There was close temporal proximity between the acts; the robbery and shooting took place at the same time, spanning approximately five minutes. [BIC 2] The conspiracies involved the same coconspirators—Defendant and Jasmine. In addition, the overt acts were part of a continuous plan to rob Victim. *See Gallegos*, 2011-NMSC-027, ¶ 62 ("That the same agreement evolved over time to embrace a . . . new objective . . . did not create a new crime but simply added a new objective to the same criminal combination."). Accordingly, this case does not involve a significant break in events sufficient to rebut the presumption, and we vacate Defendant's conviction for conspiracy to commit armed robbery. *See State v. Torres*, 2018-NMSC-013, ¶ 40, 413 P.3d 467 (stating that "[t]he appropriate remedy is to vacate the defendant's redundant convictions with punishment imposed on the single remaining conspiracy at the level of the highest crime conspired to be committed." (alterations, internal quotation marks, and citation omitted)).

**Motion for Mistrial**

**{15}**   Lastly, Defendant argues the district court abused its discretion in denying his motion for mistrial based on the State's late-disclosure of: (1) a ballistics report indicating that a gun found elsewhere had been tested but did not match the evidence collected from the scene in this case; and (2) photographs of an ammunition container recovered from Jasmine's apartment. [BIC 5; AB 11-12]

**{16}**   We review the district court's denial of a motion for mistrial for an abuse of discretion. *State v. Jackson*, 2021-NMCA-059, ¶ 13, 497 P.3d 1208 ("The district court abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." (internal quotation marks and citation omitted)). "In determining whether the late disclosure of evidence requires reversal, a reviewing court will consider [four] factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non[]disclosed evidence was material; (3) whether the non[]disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701 (internal quotation marks and citation omitted). The test for materiality is whether there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* ¶ 11 (internal quotation marks and citation omitted). As for prejudice, we look to whether the defense's case "would have been improved by an earlier disclosure or how [the defense] would have prepared differently for trial." *Id.* ¶ 14.

**The Ballistics Report**

**{17}** As to the ballistics report, even if we were to conclude here that the State had breached its duty, Defendant has not demonstrated that the information in the report was material. *Id.* ¶ 11. We are unpersuaded by Defendant's assertion that, because the report "dealt with ballistics" he "could have investigated and possibly found more evidence." [BIC 14] As the district court noted, the gun that was the subject of the report was not the one used in the shooting in this case [6/13/2023 CD 2:49:50-2:50:15; BIC 5; AB 12], and it is undisputed on appeal that the gun was not related to this case. [BIC 5; AB 14]

**{18}** Defendant has similarly failed to demonstrate that he was prejudiced by the late disclosure. He asserts that he was prejudiced "simply by receiving evidence in the middle of trial . . . that could not be investigated or countered." [BIC 15] In support of this statement, Defendant cites *State v. Le Mier*, 2017-NMSC-017, 394 P.3d 959, in which our Supreme Court concluded that the defendant was prejudiced by a failure to comply with pretrial discovery orders because it caused needless delay and created the possibility of trial surprise. *Id.* ¶ 25. *Le Mier* is inapplicable here, where the late disclosure of evidence has already occurred and the appropriate measure of prejudice is whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial. *State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027; *McDaniel*, 2004-NMCA-022, ¶ 14. Here, Defendant has neither identified ways in which his case would have been improved by earlier disclosure or explained how he would have prepared differently for trial if he had known of the report sooner. Instead, he asserts that he could have investigated and "possibly found more evidence." [BIC 14] Accordingly, we conclude Defendant has not demonstrated prejudice. *See McDaniel*, 2004-NMCA-022, ¶ 14 ("The question of whether additional discovery might have benefitted the defense is pure speculation." (text only) (citation omitted)); *State v. Ernesto M., Jr.* (*In re Ernesto M., Jr.*), 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

**{19}** Finally, contrary to Defendant's assertion that the district court provided no cure for the late disclosure of the report [BIC 15], we note that the district court ruled that the State could not admit the report into evidence or elicit testimony from law enforcement regarding the report, but Defendant could refer to the report if he wished to do so [6/13/2023 CD 2:51:03-2:51:44]. Defendant neither acknowledges the cure that the district court fashioned nor clarifies why it was inadequate.

**Photographs**

**{20}** As to the photographs of the ammunition container, Defendant has similarly failed to demonstrate prejudice despite his claim that he was "prejudiced by the inability to examine the photographs prior to trial" because he was not allowed to "investigate in a meaningful manner." [BIC 15] Even assuming there was a breach of duty and the photographs were material, Defendant has not established prejudice; he has not

clarified what knowledge he would have gained by examining the photographs prior to trial or explained what investigation he would have undertaken. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10. Moreover, the officer who took the photographs in question also created a report detailing the steps she took, and that report was disclosed to the defense. [6/13/2023 CD 2:33:10] Defendant has not explained why the photographs would have provided a different manner of investigation or trial preparation when the officer's report describes the officer's actions in investigating the ammunition container. *Cf. State v. Griffin*, 1988-NMCA-101, ¶ 13, 108 N.M. 55, 766 P.2d 315 (concluding that the testimony of the undisclosed witness was ascertainable from the state's exhibits). In addition, Defendant has not explained why the district court's cure of excluding the photographs was inadequate. [6/13/2023 CD 2:33:10-2:34:00]

{21}    Given Defendant's failure to demonstrate materiality of the report, the prejudice suffered as a result of the late disclosures of both items, or the inadequacy of the district court's curative measures, we conclude that Defendant has failed to demonstrate an abuse of discretion in the district court's denial of his motion for mistrial. *See State v. Johnson*, 2024-NMCA-015, ¶ 37, 541 P.3d 141 ("[I]t is the appellant's burden to demonstrate, by providing well supported and clear arguments that the district court has erred." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

{22}    For the reasons explained above, we reverse Defendant's conviction for felon in possession of a firearm and vacate both that conviction and Defendant's conviction for conspiracy to commit armed robbery. We otherwise affirm. We remand for further proceedings consistent with this opinion.

{23}    **IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**GERALD E. BACA, Judge**