This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42384**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAMES OTT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Stephen Ochoa, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to the Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in In re Pilot Project for Criminal Appeals, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, the answer brief, and the reply brief, we affirm for the following reasons.

**{2}** Defendant appeals his convictions for criminal damage to property, assault on a peace officer, and resisting, evading, or obstructing a peace officer. [RP 202] Defendant argues that the State failed to present sufficient evidence of the value of the damaged property to support a felony conviction for criminal damage to property, and the jury instruction defining "amount of damage" was improper. Defendant also argues that his convictions for both resisting, evading, and obstructing and assault on a peace officer violate double jeopardy. For the following reasons, we affirm.

**{3}** We first consider Defendant's challenge to the sufficiency of the evidence. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{4}** In order to convict Defendant of felony criminal damage to property, the State was required to prove Defendant intentionally damaged the property of another without consent and the amount of damage exceeded $ 1,000. *See* NMSA 1978, § 30-15-1 (1963) (defining criminal damage to property); UJI 14-1501 NMRA (stating elements). Defendant does not contest that he repeatedly kicked the rear passenger door of a police vehicle as he was being transported to jail and that this caused damage. Rather, Defendant argues that the State failed to present sufficient evidence that the amount of damage to the property exceeded $1,000. [BIC 11-19; RB 3-5]

**{5}** For purposes of a criminal damage to property charge, the amount of damage is calculated as either "the difference between the price at which the property could ordinarily be bought or sold prior to the damage and the price at which the property could be bought or sold after the damage," UJI 14-1510 NMRA, or "the cost of repair or replacement, whichever is less." *State v. Fierro*, 2024-NMCA-016, ¶ 8, 542 P.3d 802 (internal quotation marks and citation omitted).

**{6}** At trial, Johnny Whitlock, the owner and operator of an auto body shop, testified that he repaired the damage to the door, and the State introduced an itemized receipt for the repair in the amount of $3,412.06. [6/3/2024 FTR 2:52:03-2:55:15; BIC 14] Officer Jantzen Duran testified that the vehicle was a 2014 Ford Explorer that was regularly maintained and in good condition. Officer Duran also testified that the vehicle was fitted with specialized police equipment including lights, sirens, bars on the windows, and a cage in the back. [6/3/2024 FTR 2:18:00-2:21:49] Mr. Whitlock additionally testified that the vehicle was worth more than the cost of the repair. [6/3/2024 FTR 2:55:30-45]

**{7}**      Defendant argues that the State was required to prove the replacement cost of the vehicle in addition to the cost of repair to establish the amount of damage. [BIC 14-19] We disagree. Generally, because the measure of damage is the lesser of the cost of repair or the cost of replacement, whichever is less, *see State v. Cobrera*, 2013-NMSC-012, ¶ 8, 300 P.3d. 729, we have required the State to produce evidence of both the repair and the replacement cost so that the jury can compare them. However, we have recognized that evidence of replacement cost may not be required when an average juror would know that the replacement cost of the damaged item is well over the cost to repair the damage. *See State v. Barreras*, 2007-NMCA-067, ¶ 9, 141 N.M. 653, 159 P.3d 1138. In *Barreras*, the defendant damaged a one-year-old Cadillac Escalade that had been in good condition. *Id.* We rejected the defendant's argument that the state was required to present evidence of the replacement cost of the vehicle and held that the jury could infer that the replacement cost exceeded the $5,100 cost of the repairs, reasoning the jurors "would know that such a high-end sport utility vehicle has a replacement cost well over $5,100." *Id.*

**{8}**      However, we cautioned in *Barreras* that "[e]vidence of replacement cost may be necessary where the vehicle is older and/or made by a lesser-named manufacturer." *Id.* Thus, in *State v. Fernandez*, we held that the state was required to present evidence of both the repair and the replacement cost of a damaged pickup truck because "the 'average juror' had no basis upon which to determine that the replacement cost of [the victim's] pickup truck, which was over a decade old and had noticeable preexisting damage, would be 'well over' the $1[,]500 cost of repair." 2015-NMCA-091, ¶ 10, 355 P.3d 858 (*quoting Barreras*, 2007-NMCA-067, ¶ 9).

**{9}**      The circumstances in this case are more like those presented in *Barreras*. Here, the State presented evidence that the Ford Explorer was only seven years old at the time of the damage, in cosmetically good condition, well-maintained, and outfitted with specialized police equipment. [BIC 16] Additionally, Mr. Whitlock testified, without objection, that the vehicle was worth more than the cost of the repair work done. Based on this evidence, the jury could reasonably conclude that the replacement cost of the vehicle exceeded the cost of repair, and the State was not required to present further evidence of the cost of replacement. *See Barreras*, 2007-NMCA-067, ¶ 9; *see also Fernandez*, 2015-NMCA-091, ¶ 9 ("In some cases, . . . the facts may clearly establish that the replacement cost would exceed the cost of repair and no additional evidence or testimony may be required; nonetheless, the replacement cost remains part of the [s]tate's burden.").

**{10}**      Defendant next argues that it was reversible error for the district court to omit part of the definitional instruction on "amount of damage" from the instructions provided to the jury. [BIC 19-23] "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted).

**{11}** UJI 14-1510 sets out two methodologies for calculating damages. "The first method is the diminution in the value of the property due to the damage, or the 'before and after value.' The second method is the cost of repair or replacement, whichever is less." *Cobrera*, 2013-NMSC-012, ¶ 8 (citation omitted); *Barreras*, 2007-NMCA-067, ¶ 5. Our case law further recognizes that the two methods of proving the amount of damage are separate, and neither method is preferable to the other. *See id.* (recognizing that "the two sentences of the instruction provide two separate methods for evaluating property damage"); *Barreras*, 2007-NMCA-067, ¶ 11 (discussing that UJI 14-1510 "provides two distinct methods, neither one more preferable than the other for proving the amount of damage to property").

**{12}** In this case, the instruction given by the district court omitted the "before and after" method and instructed the jury only on "the cost of repair or replacement" method. The jury was thus instructed only on the second method of proving the amount of damage, which was the only method the State relied on at trial. As the State was not required to present evidence of the "before and after" value of the vehicle, we perceive no reversible error due to the absence of the definition of this method from the jury instruction. *See Cobrera*, 2013-NMSC-012, ¶ 8 ("Under the second method, the [s]tate does not need to demonstrate the value of the property immediately prior to the damage."); *Barreras*, 2007-NMCA-067, ¶ 11 (holding that when the state relies on cost-of-repair evidence, "the amount of damage can be assessed without determining the before and after value of the property").

**{13}** Finally, Defendant argues that his convictions both for resisting, evading, or obstructing a peace officer and assault on a peace officer violate his right to be free from double jeopardy. [BIC 23-30] "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant raises a "double-description," double jeopardy claim, which occurs when "a single act results in multiple charges under different criminal statutes." *State v. Jackson*, 2020-NMCA-034, ¶ 27, 468 P.3d 901 (internal quotation marks and citation omitted).

**{14}** "[T]o establish a double jeopardy violation in double-description cases, a defendant must demonstrate that the conduct is unitary and that the Legislature did not intend separate punishments for the offenses at issue." *State v. Cardenas*, 2025-NMSC-020, ¶ 52, 572 P.3d 958. To determine whether conduct is unitary, we examine whether the defendant's acts are "separated by sufficient indicia of distinctness." *State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (internal quotation marks and citation omitted). "[W]e consider such factors as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and a defendant's goals for and mental state during each act." *State v. Ford*, 2007-NMCA-052, ¶ 12, 141 N.M. 512, 157 P.3d 77.

**{15}** Relying on statements made by the prosecutor during opening statements, Defendant argues that the convictions for resisting, evading, or obstructing and for assault were based on Defendant's refusal to exit the police vehicle on arrival at the jail

and his acts of trying to kick officers during their ensuing attempts to bring him inside, all of which occurred in a very brief period of time. [BIC 26] However, "[t]he conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). The elements instruction for resisting, evading, and obstructing, required the jury to consider whether Defendant "resisted or abused [Officer] Duran in the lawful discharge of [his] duties," but it did not further define the specific conduct at issue. [RP 173] While the State initially argued during opening statements that the resisting charge would be established by Defendant's refusal to get out of the police vehicle and walk into the jail, following the presentation of evidence, the State argued in closing that Defendant had resisted the officer by refusing his directives to stop kicking the police car. *See State v. Contreras*, 2007-NMCA-045, ¶¶ 22-23, 141 N.M. 434, 156 P.3d 725 (examining the state's closing argument to ascertain its legal theory of the charges). At trial, there was evidence presented that Defendant had not complied with Officer Duran's repeated commands to stop kicking the vehicle while en route to the jail, causing Officer Duran to have to pull the vehicle over and wait for back up and an escort to the jail from other officers. [6/3/2024: FTR 1:52:47-1:55:04; 2:07:07-2:07:54] *See State v. DeGraff*, 2006-NMSC-011, ¶¶ 28-30, 139 N.M. 211, 131 P.3d 61 (evaluating unitary conduct based on the statutory definitions of the crime, the jury instructions, and the evidence presented at trial); *State v. Gwynne*, 2018-NMCA-033, ¶ 12, 417 P.3d 1157 (recognizing that in analyzing whether conduct is unitary, "the proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." (alteration, internal quotation marks, and citation omitted)).

{16}    To prove assault on a peace officer, the instruction required the jury to consider whether Defendant: (1) "intended to commit the crime of battery against [Officer] Duran by kicking at him," and (2) "began to do an act which constituted a substantial part of the battery but failed to commit the battery." [RP 174] The evidence and arguments at trial in support of this charge were that, on arrival at the detention center, Defendant refused the officers' instructions to get out of the police car, and had to be physically removed. Defendant then refused to walk, and, as he was being dragged inside by the officers, he began trying to kick the officers, including Officer Duran. [6/3/2024 FTR 1:54:31-1:56:41]

{17}    Applying the relevant factors to these facts, Defendant's conduct was not unitary. Defendant's refusal to stop kicking the door occurred inside the police vehicle on the way to jail and was directed at damaging the vehicle. In contrast, Defendant's attempt to kick Officer Duran occurred after Defendant arrived at the detention center and had been removed from the vehicle and was directed at harming Officer Duran. *See State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (noting that change in behavior and intent can support separate crimes). Moreover, an intervening event occurred when Officer Duran had to stop the vehicle and await assistance from other officers before resuming the transport to the jail. *See State v. Andazola*, 2003-NMCA-146, ¶ 15, 134 N.M. 710, 82 P.3d 77 ("[C]onduct is not unitary if the defendant's acts

have sufficient indicia of distinctness."); *see also Phillips*, 2024-NMSC-009, ¶¶ 12, 38 (listing "the existence of intervening events" as a relevant factor in the unitary conduct analysis).

{18}    The facts here are thus distinguishable from those in *Ford*, on which Defendant relies. [BIC 27] In *Ford*, we held that the defendant's actions were unitary where he struggled with officers who were trying to handcuff him and kicked an officer in the shin during the struggle. 2007-NMCA-052, ¶ 13. These acts were close in time and distance and "could easily be considered acts having only to do with his arrest." *Id.* ¶ 14. In this case, the conduct supporting the two charges took place at separate locations, the nature and objectives of the acts was different, and a significant intervening event occurred. *Cf. State v. Melendrez*, 2014-NMCA-062, ¶ 8, 326 P.3d 1126 (stating that unitary conduct may be characterized by acts that are done "close in time and space" and without intervening events). For these reasons, we hold that Defendant's convictions for resisting, evading, and obstructing and assault on a peace officer did not violate double jeopardy. *See State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261 (explaining that if the conduct is not unitary, "the protection against double jeopardy has not been violated and we proceed no further").

{19}    For these reasons, we affirm.

{20}    IT IS SO ORDERED.

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**ZACHARY A. IVES, Judge**